MISSISSIPPI BANKING DEPARTMENT *et al. v.* ADAMS.[*]

(Division B. Dec. 8, 1924.)

[102 So. 70.   No. 24359.]

1. BANKS AND BANKING. Liquidating agent of bank which had paid depositors in full and all assessments could recover from state treasurer bonds or money deposited under statutes.

When a bank organized under chapter 124, Laws of 1914, as amended by chapter 207, Laws of 1916, voluntarily liquidates and goes out of business, after having paid its depositors in full, and paid all assessments made against it while it was doing business, as provided by section 40 of the Act of 1914 (section 3598, Hemingway's Code), its liquidating agent is entitled to recover from the state treasurer all bonds or money it has deposited with him under the provisions of these acts.

2. STATEMENT OF STATUTE.

Section 40 of this act (section 3598, Hemingway's Code) is plain and unambiguous. It provides that a guaranty bank upon retiring from business, shall be entitled to receive from the state treasurer its bonds deposited with him, after all its depositors have been paid in full, and after it had paid all assessments on account of the guaranteed banks in liquidation.

---

[*]Headnote 1. Banks and Banking, 7 C. J., Section 15 (1926 Anno).

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suit by C. Adams, Liquidating Agent of the Gloster Bank & Trust Company, against the Mississippi Banking Department and others. Judgment for plaintiff, and defendants appeal. Affirmed.

*Flowers & Brown* and *H. T. Odom,* for appellant.

Purpose, Scope and Validity of Guaranty Law.  One
of the principal purposes of chapter 124 of the laws of
1914, known as the Banking Law, was to provide a
system for guaranteeing deposits without expenses to
the state, the guaranty feature involved in this lawsuit
being found in sections 33 to 46, inclusive.  Of course,
there could be no question in this case as to the wisdom
of the statute if our court had not already expressed it-
self as being of the opinion that the guaranty feature of
our Banking Law was a wise provision, for this is a
matter entirely up to the legislature and for which it alone
is responsible.  *Bank of Oxford* v. *Love,* 111 Miss. 699; 72
So. 133.  Neither do we think that the validity or con-
stitutionality of the statute under consideration can be
raised in this case, because this proposition also has
been finally settled by our court.  *Bank of Oxford* v.
*Love, supra.*

Section 40 is as follows: "A solvent guaranteed bank,
upon retiring from business and liquidating its affairs,
shall be entitled to receive from the state treasurer its
bond or money pledged, after all depositors in such bank
and all assessments on account of the guaranteed banks
in liquidation have been paid in full, but not any part
of any unused assessments that may be in the bank
depositors' guaranty fund."  The rule for construing
the act is found in section 45 which provides:  "All
acts and parts of acts in conflict with this act are here-
by repealed in so far as they so conflict, but no provi-
sion of any banking law or other statute of this state
shall be construed to be amended, modified or repealed
except in so far as necessary to permit the unrestricted
operation of this act as applied to banks participating
in the privileges of this act."

We take it that a reading of the statute will be in
itself sufficient to disclose the prime purpose of our

guaranty feature, but if there should be any argument advanced against our contention that the main purpose, scope and intention of the act was to guarantee deposits in all state banks, we rely on the decisions of this court. *Anderson State Bank Examiner* v. *Yates et al.* (Miss.), 99 So. 499. I feel that inasmuch as there can be no question as to the purpose of the legislature, that certain cardinal rules of construction as announced by our court, will be of much assistance in passing on the case at bar. *Learned* v. *Corley,* 43 Miss. 687; 1 Kent, p. 461; *Eskridge* v. *McGruder,* 45 Miss. 294; *Griswold* v. *National Ins. Co.,* 3 Cow. (N. Y.) 96; *Crocker* v. *Crane,* 21 Wend. (N. Y.) 21, 34 Am. Dec. 288; *Barn* v. *Greer,* 56 Miss. 710; *Leachman* v. *Musgrove,* 45 Miss. 511; *Kennington* v. *Hemingway et al.,* 101 Miss. 259, 57 So. 809; 39 L. R. A. (N. S.) 541; Ann. Cas. 1914 B, 392; *Board of Education* v. *Railroad,* 72 Miss. 236, 16 So. 489; *Roseberry* v. *Northworthy* (Miss.), 100 So. 514.

The appellee contended in the court below that the bonds should be returned to him because of section 40 of chapter 124 of the Laws of 1914, construed with section 35 of the Act. The argument was that the bank had voluntarily liquidated, paid all of its depositors in full and all assessments theretofore made against it by the banking department on account of the depositors' guaranty fund, in accordance with section 40, and that there was no method provided by the Act for enforcing the liability, that is, making assessments against solvent banks after they have completely liquidated their affairs, for the reason that section 35 of the Act as amended by chapter 207 of the Laws of 1916, provides that not more than five assessments of one-twentieth of one per cent. each, shall be made in any one calendar year and, therefore, a lump assessment could not be made. I take the position that section 35, in providing that not more than five assessments could be made in one calendar year, refers alone to banks actively engaged in an active

banking business.   There would be no reason why the assessment against a bank which was seeking to finally close out its affairs, should be distributed over a period of years in order to cover the proportinate part of the liability of such bank for losses to the depositors' guaranty fund.   It may be true that the statute does not in express terms set out the mode or method of enforcing the liability in favor of the depositors' guaranty fund when a solvent member bank liquidates, but, at the same time the statute fixes the liability.   It would be noted that the section provides that in certain cases the state treasurer may return bonds or money pledged, where solvent guaranteed banks retire from business and liquidate their affairs.   But the same section prescribes the conditions which must be complied with before such bonds are returned:  First, all of the depositors must be paid in full; and second, all assessments on account of guaranteed banks in liquidation must have been paid in full.

The construction insisted on by the appellee, would be most unfair and inequitable and render the guaranty feature of our guaranty law a nullity, while the construction which we maintain that the language of the section plainly justifies is but nothing more than what is fair and just and preserves the law.   We take the position that the legislature in enacting the statute under consideration, created an implied contract in law or a *quasi*-contract imposing liability on all state banks.   Our understanding of the law is, that such contracts are as binding on the parties as much so as express agreement. There are two classes of implied contracts, to-wit:  contracts implied in fact and contracts implied in law.   The contract in this case is one arising by implication of law because the legislature, as it had a right to do under the police power, enacted our guaranty law and provided that state banks could not operate unless they complied with the provisions thereof.   13 C. J. 244;  6

R. C. L. 588; *Gutta Percha & Rubber Mfg. Co.* v. *Mayor, etc. of Houston,* 2 Am. St. Rep. 413; *Highway Commissioners* v. *City of Bloomington, Ill.,* 253 Ill. 164, 97 N. E. 280; Ann. Cas. 1913 A. 471; Howe's Studies of Civil Law, 171; Morey on Roman Law, 371; *Pracht* v. *Daniels,* 20 Colo. 100, 36 Pac. 845; Hertzig, 29 Pa. 468; *Columbus, etc. R. R. Co.* v. *Gaffney,* 65 Ohio 104, 61 N. E. 152; *Schaeffer* v. *Miller,* 41 Mont. 417, 109 Pac. 970, 137 Am. St. Rep. 746.

In conclusion let us remind the court that the Bank of Gloster & Trust Co. voluntarily organized and submitted itself to the provisions of the depositors' guaranty law, that in doing so it contracted with the state of Mississippi, all of the guaranteed banks and all of their depositors; that it would share its proportionate share of the burden if allowed to participate in its benefits. It has received the benefits and enjoyed all the privileges granted by said statute, and we now respectfully urge that it cannot flee in safety with just debts unpaid. The doctrine of estoppel would certainly apply in such a case. *Meyer-Bridges Co.* v. *Badeaux,* 90 Miss. 27, 43 So. 609; *Pate* v. *Bank of Newton* (Miss.), 77 So. 603.

*Currie & Smith,* for appellee.

It is insisted by the appellant that the banking department has the power and the right, not only to levy and collect assessments prescribed by the statute, but that it has the right to subject the deposit of a bank to its proportionate share of such losses as may have accrued during the life of the bank, even though the bank may have liquidated as a solvent institution, under the express provisions of the law. The bank insists that it is entitled to a return of its bonds when it has liquidated, by paying all assessments prescribed by the statute and levied by the department, and when it has paid its debts and its depositors in full.

Counsel for the appellant suggest that this is a test case, involving the guaranty feature of our banking law. We submit that this statement is rather broad, as the particular point involved is not the guaranty feature of the banking law, but is the right of a guaranteed bank to recover its bonds when it retires from the system. We submit that the purpose, scope and .validity of the guaranty law are not involved in this controversy, and that the decisions of our court cited, by counsel in respect thereto, have no relevancy here, because the rights of the appellee do not depend upon whether the law is a wise one or not, but they rest upon the express provisions of the Act. The general extracts from the guaranty law do not settle the question, because they simply show that the legislature intended, not to guarantee deposits, but merely to provide a system. The purpose of the legislature was simply to guarantee deposits in so far as the guaranty fund would suffice, and no further. If all the contentions of the appellant were true, it is manifest that the legislature did not intend to guarantee· bank deposits, or to see that the fund would be sufficient for such a purpose, but its intention was merely to establish a system, and to provide, within certain limitations, how funds should be raised; and that such funds, when so raised, would be applied to the guarantee of deposits. It cannot be said that the legislature intended to guarantee deposits, because the state assumes no responsibility, and it was and is impossible for the legislature to know how many banks would join the system, or how much money would come into the fund; and it was and is likewise impossible for the legislature to know how many banks would fail. And it is therefore palpable that the purpose of the legislature was not to guarantee bank deposits, but it was merely to establish a system, and to raise funds in a certain manner, which should be applied to guarantee deposits. The argument, therefore, that the legislature guaranteed, or intended to

guarantee, deposits, utterly fails, even if every contention of the banking department should be upheld.

Section 33 of the banking law certainly is not relevant, because it merely states that the depositors of a guaranteed bank are guaranteed. Section 34 does not militate against the contention of the appellee, because this section merely requires a bank, as an evidence of good faith, to deposit and maintain certain bonds. Section 35 expressly limits the assessments within any one year to five. Section 37 shows that there can be no default of a bank until it has been assessed and notified. Section 38 and 39 have no relevancy to the present case, because it is perfectly apparent that the legislature had in mind that bank deposits were guaranteed only so far as the assessments already levied would protect them. And any person dealing with a guaranteed bank would be charged with this limitation upon the fund. Section 40 of the Act is the only section which is actually in controversy here. No rule for construing it is necessary, except to attribute to the words their usual and ordinary meaning. Section 45 furnishes no rule of construction as to this particular statute, but it merely prevents other statutes from interfering with the banking statute. The general rules for construing statutes, which are elaborately discussed in the brief of counsel for appellant, have no application here, because section 40 is clear and unambiguous on its face, and it states the intention of the legislature with reference to the liquidation of a solvent bank.

We submit that it would have been impossible for the legislature to have charged against a member of the system, a liability for any part of the deficit in the guaranty fund, unless the assessment was made before its withdrawal from the system. There is no possible rule for determining what such a deficit would be. If the rule insisted upon by the banking department is a correct interpretation of the statute, then it would be impossible

for any bank to liquidate safely. It would not only be liable for its bonds or other securities, but it would be liable to the full extent of its assets for the deficit in the guaranty fund. We submit that there is no distinction between the liability of the bonds and the general assets of the solvent bank, except as to assessments already levied, and that therefore the bonds can no more be held for an alleged deficit for which no assessment has been made, than can the remaining assets of a solvent bank.

In his application of the statute, counsel for appellant takes the position that section 35 of the Act, in providing that no more than five assessments shall be made in any one year, has reference to banks actively engaged in business. This may be true, but the same argument demonstrates that the statute makes absolutely no provision for levying an assessment of any sort against a solvent bank which has gone out of business. We submit that there is no ground for the contention of counsel that the words, "on account of guaranteed banks in liquidation," in meaningless, unless it has the significance the banking department attempts to attach to it. These words mean exactly what they say, and they modify the word assessment, which is not used in the sense of liability, because assessment as used in section 40 must precede liability.

The appellee bank received no greater benefits than any other bank, and its depositors were guaranteed to no greater extent proportionately, than were the dedeposits of other banks. Counsel argues that the Bank of Gloster impliedly contracted with its depositors and the other banks and their depositors, to pay its proportionate part to the guaranty fund. We submit that no such implied contract arises. The liability of the Gloster Bank and the rights of its depositors, and of all other banks and their depositors, is fixed expressly by the terms of the statute, and there is no room for any

implication with reference to the liability of any member. An implied liability cannot exist where liability is expressly limited by the terms of the law. The relationship of the Gloster Bank to the guaranty system is not a contractual relationship, but it is a system prescribed by law. 7 C. J. 484, note 73; *Fidelity Savings Bank* v. *Vandiver*, 125 Md. 352, 93 Atl. 978.

*Watkins, Watkins & Eager* and *Lowrey & McLain,* for appellee.

The sole and only question presented herein is as to whether or not the Bank of Gloster, being a perfectly solvent institution, went into liquidation in January, 1922, at the time having discharged every assessment made against it by the banking department of the state of Mississippi, was entitled to receive from the banking department the securities deposited with it as a condition precedent to its receiving a guarantee certificate; and as to whether or not the securities are liable for the unpaid deposit liabilities of other banks and of the unliquidated liabilities of the guarantee fund. The determination of this question does not present the power of the legislature to make one bank liable for the deposit liabilities of insolvent banks; the only question involved is one of the enforcement of perfectly plain and unambiguous statutes. These statutes do not need any construction; they only need to be enforced. It does not take any judicial determination to tell what the legislature meant; it will only be necessary to do what the legislature provided. *Hamner* v. *Lumber Co.*, 100 Miss. 349; *State* v. *Trailor,* 100 Miss. 558.

*Green, Green & Potter, amicus curiae.*

Point I.—To sustain appellant's contention would invalidate the law. *Munn* v. *Illinois,* 94 U. S. 113;

*Citizens L. Asso.* v. *Topeka,* 20 ·Wall. 655, 22 L. Ed. 455; *Lowell* v. *Boston,* 111 Mass. 454, 15 Am. St. Rep. 39. When the banking business ceased, the property became purely private, and being private, thereover existed no legislative power to regulate. *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Powell* v. *Pennsylvania,* 127 U. S. 678, 32 L. R. 253, 256; *Insurance Co.* v. *Dodge,* 246 U. S. 374; *United States* v. *Knight,* 156 U. S. 1; *United States* v. *Freight Ass'n.,* 166 U. S. 320; *Savings & Loan Ass'n.* v. *Topeka,* 20 Wall. 662; *Madisonville Traction Co.* v. *St. Bernard,* 196 U. S. 252, 49 L. Ed. 462; *Assaria State Bank* v. *Dolley,* 219 U. S. 126.

Point. II.—Judicial decisions sustaining contention. *Citizens National Bank* v. *Freeling,* 184 Pac. 63; *People* v. *Walker,* 17 N. Y. 502; *Noble State Bank* v. *Haskell,* 119 U. S. 112; *Bank* v. *State Treasurer,* 37 Vt. 92; *State of Maryland* v. *National Bank of Baltimore,* 33 Md. 75; *McCullough* v. *State of Maryland,* 4 Wheaton 316; *Howell* v. *State,* 3 Gill. 14.

Point III.—The act itself requires this interpretation. The Banking Act was substantially re-written, Laws of 1923, ch. 172, and from a consideration thereof, the proposition here propounded is demonstrable. Section 3598, Hemingway's Code. This section is directly controlling. *Brooks-Scanlon Co.* v. *Railroad Commission,* 251 U. S. 212; *Ex Parte Taylor,* 58 Miss. 482; *Bell* v. *Kerr,* 80 Miss. 179; *Railroad Company* v. *Clark,* 95 Miss. 691; *V. & M. Ry. Co.* v. *State,* 62 Miss. 105; *Fidelity Savings Bank* v. *Vandiver,* 93 Atl. 978.

Argued orally by *H. T. Odom,* for appellant, and *W. H. Watkins,* for appellee.

Sykes, P. J., delivered the opinion of the court.

The Gloster Bank & Trust Company, a state bank organized under chapter 124, Laws of 1914, as amended

by chapter 207, Laws of 1916, was chartered in 1919, and became one of the guaranteed banks of the state under the above acts. While it continued in business it paid every assessment levied against it for the support and maintenance of the guaranty fund, as provided by section 35, chapter 207, of the Laws of 1916. In January, 1922, it voluntarily liquidated and discharged and paid in full all of its deposit liabilities. It has also paid all assessments made against it under the above acts. When it started business, and in compliance with these acts, it deposited with the state treasurer proper bonds of the par value of five hundred dollars.

By this suit its liquidating agent seeks to recover from the state treasurer and the banking department these bonds. It is unnecessary to review in full the various sections of these acts relating to this guaranty law, because this case must be determined by a construction of section 40 of the Act of 1914 (section 3598, Hemingway's Code), which reads as follows:

"A solvent guaranteed bank, upon retiring from business and liquidating its affairs, shall be entitled to receive from the state treasurer its bond or money pledged, after all depositors in such bank and all assessments on account of the guaranteed banks in liquidation have been paid in full, but not any part of any unused assessments that may be in the bank depositor's guaranty fund."

- It is the contention of the banking department that the liquidating agent of this bank is not entitled to the return of these bonds until the liabilities of all guaranteed banks in liquidation have been paid in full. That the record in this case shows that there are approximately five hundred thousand dollars of liabilities incurred before and during the time the Gloster Bank was doing business, and that these bonds are liable for the *pro rata* part of the liabilities which the Gloster Bank would have to pay, provided it continued in business. It is the

contention of the appellee liquidating agent that it is not liable for anything more than the assessments which have been made against it, and, since in this case the Gloster Bank paid all assessments made against it, it is liable for nothing more.

It is needless for us to discuss the holdings of other states, nor is it for us to consider the wisdom or folly of this section of the act. This section is perfectly plain and unambiguous, and practically construes itself. It says that a guaranteed bank upon retiring from business shall be entitled to receive from the state treasurer its bonds after all its depositors have been paid in full, and after it has paid all assessments on account of the guaranteed banks in liquidation. It has to pay nothing more than the assessments that have been made against it under this banking law. It is not liable for any fund under this act until an assessment has been made against it. This law limits the number of assessments each year and the amount thereof. The bank paid these assessments, and its liquidating agent is entitled to a return of these bonds. The learned chancellor so held, and his decree is affirmed.

*Affirmed.*